IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DREW COLEMAN, | ) | |
|     Plaintiff | ) | C.A. No. 15-100 Erie |
| | ) | |
| v | ) | **District Judge Rothstein** |
| | ) | **Magistrate Judge Baxter** |
| DOCTOR NANCIE R. FLYNN | ) | |
| MCGARVIE, et al., | ) | |
|     Defendants | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' motion for summary judgment [ECF No. 37] be granted.

### II. REPORT

#### A. Relevant Procedural History

Plaintiff Drew Coleman, an inmate formerly incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"),[1] initiated this civil rights action on April 10, 2015, by filing a *pro se* complaint, pursuant to 42 U.S.C. § 1983, against Defendants Doctor Nancy R. Flynn McGarvie ("McGarvie"), the Medical Director at SCI-Forest, and Beverly Summers O'Rourke ("O'Rourke"), a Certified Registered Nurse Practitioner at SCI-Forest.

In his *pro se* complaint, Plaintiff claims that Defendants were deliberately indifferent to

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Retreat in Hunlock Creek, Pennsylvania.

1

his serious medical needs in violation of the eighth amendment to the United States Constitution. As relief for his claims, Plaintiff seeks monetary damages.

On May 16, 2016, Defendants filed a motion for summary judgment [ECF No. 37], arguing that Plaintiff has failed to establish that they were deliberately indifferent to his serious medical needs. Plaintiff filed a timely brief in opposition to Defendants' motion [ECF No. 43], Defendants filed a reply brief [ECF No. 44], and Plaintiff filed a "reply response" [ECF No. 45]. This matter is now ripe for consideration.

**B.** **Relevant Factual History**[2]

On August 16, 2013, while incarcerated at SCI-Forest, Plaintiff injured his right pinkie finger while playing basketball. (ECF No. 38, Defendants' Statement of Material Facts, at ¶ 2). He was seen by a nurse the same day, who ordered an x-ray, prescribed 400 mg of Motrin, and told Plaintiff to restrict his activities. (Id.). On August 19, 2013, an x-ray of Plaintiff's right hand was performed, which revealed subluxation of the fifth PIP joint. (Id. at ¶ 4). Plaintiff was seen the next day by CRNP Beverly Coleman who gave him a local anesthesia block to his pinkie finger and reduced the joint back into place, after which a splint was applied that Plaintiff was instructed to wear at all times. (Id. at ¶ 5; ECF No. 43-1, Plaintiff's medical records, at p. 21).

On August 27, 2013, Plaintiff was examined by Defendant O'Rourke, who removed Plaintiff's splint and noted that his finger was edematous and tender. After discussing the matter with Defendant McGarvie, it was agreed that Plaintiff's hand should be x-rayed again. (ECF No.

---

2

The factual history set forth herein has been gleaned from Defendants' Statement of Material Facts [ECF No. 38], to the extent Defendants' factual statements are admitted or unopposed by Plaintiff, and/or are adequately supported by

38, at ¶ 6). A second x-ray of Plaintiff's right hand was taken the next day, which revealed that the fifth PIP joint was again dislocated. (Id. at ¶ 7). Plaintiff was then seen the same day by Defendant O'Rourke, at which time his finger was again anesthetized locally and both Defendants O'Rourke and McGarvie attempted to reduce the dislocation, but were unsuccessful. As a result, an orthopedic consult was ordered, Plaintiff was prescribed Vicodin for pain, and his finger was re-splinted. (Id. at ¶ 8; ECF No. 39-1, SCI-Forest medical records, at pp. 11-12).

Plaintiff was transported to Kane Community Hospital ("Kane") on September 9, 2013, for an orthopedic consult with Dr. Kostopoulos, and another x-ray of Plaintiff's right hand was taken, which confirmed a posterior dislocation of the PIP joint on the right little finger. (ECF No. 38, at ¶ 9). After examination, Dr. Kostopoulos recommended attempting a closed reduction and, if unsuccessful, an open reduction, to which Plaintiff agreed. (Id.). Dr. Kostopoulos's recommended procedures were approved the same day by Defendant McGarvie. (Id. at ¶ 10). On September 10, 2013, Plaintiff was taken to Kane's operating room, where Dr. Kostopoulos had Plaintiff placed under general anesthesia and then attempted to reduce the dislocation manually, without surgery; however, he noted that "the joint was unstable and was easily dislocated again, apparently from soft tissue interposition." (Id. at ¶ 11; ECF No. 39-2, Kane medical records, at pp. 4-5). As a result, an open reduction was performed to repair the dislocation surgically. (Id.).

Upon his return to SCI-Forest, Plaintiff was placed in the infirmary and Defendant McGarvie ordered a post-operative consult with Dr. Kostopoulos for September 25, 2013. (ECF No. 38, at ¶ 12). On September 25, 2013, Dr. Kostopoulos reported that Plaintiff's x-rays showed

---

the medical evidence of record.

no re-dislocation; thus, he ordered that the splint be discontinued and that Plaintiff begin physical therapy for range of motion. (Id. at ¶ 13). Upon Plaintiff's return to SCI-Forest, Defendant McGarvie released him to general population and referred him to the physical therapist, Eugene Zappa ("Zappa"). (Id. at ¶¶ 14-15). On October 28, 2013, Zappa instructed Plaintiff in active and passive range of motion exercises for his finger, noting that Plaintiff had pain and stiffness in his right fifth finger, with swelling and limited range of motion. (Id. at ¶ 16).

On October 30, 2013, Plaintiff returned to Dr. Kostopoulos, who provided a PIP joint dynamic splint to be worn five minutes on and five minutes off, which was to be eventually exchanged for a smaller sized splint when the deformity was reduced. (Id. at ¶ 18). The next day, Defendant McGarvie put in a consult request for Plaintiff to see Dr. Kostopoulos again on December 11, 2013. (Id. at ¶ 19). Defendant McGarvie left SCI-Forest soon thereafter, having no further interaction with Plaintiff. (Id. at ¶ 20). Plaintiff was seen again by Dr. Kostopoulos on December 11, 2013, at which time he was told that he was a candidate for soft tissue release, and that his range of motion would not fully recover due to posttraumatic degenerative joint disease and delayed reduction. (Id. at ¶ 22).

### C. Standards of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is

made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409

F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

"Where the party opposing a motion for summary judgment bears the ultimate burden of proof, the moving party may discharge its initial burden of showing that there is no genuine issue of material fact 'by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Player v. Motiva Enterprises, LLC, 240 Fed.Appx 513, 522 n4 (3d Cir. 2007) quoting UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). If the moving party has satisfied its initial burden, the nonmoving party must, in their opposition to the motion, identify evidence of record that creates a genuine issue of material fact. Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) ("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997) (overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### D. Discussion

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier,

182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[3] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received

---

[3] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

some level of medical care").

Here, Plaintiff's medical records belie any claim of deliberate indifference stemming from delay in treatment or disregard of Plaintiff's complaints. Indeed, the records reflect that Defendants provided timely and frequent medical treatment for Plaintiff's finger injury. Instead, Plaintiff acknowledges in his "reply response" that his complaint is "based upon defendants' inadequate treatment" and seeks to hold Defendants liable for their alleged negligence or malpractice (ECF No. 45, at p. 2); however, as noted above, negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. Moreover, "mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation. White, 897 F.2d at 110. As a result, summary judgment should be granted in favor of Defendants and against Plaintiff, accordingly.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion for summary judgment [ECF No. 37] be granted, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir.

2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: November 2, 2016

cc: The Honorable Barbara Rothstein
United States District Judge